**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Radix Law PLC, | No. CV-20-01304-PHX-DWL |
| Plaintiff, | **ORDER** |
| v. | |
| Silicon Valley Bank, | |
| Defendant. | |

## INTRODUCTION

In March 2020, the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act") came into effect. Among other things, the CARES Act created the Paycheck Protection Program ("PPP"). The purpose of the PPP was to provide an incentive for small businesses to keep workers on the payroll.

The mechanics of the PPP were that a borrower would apply directly to a private lender for a loan. PPP loans were not ordinary loans, however—they were forgivable if the borrower met certain requirements. The federal government, in turn, fully guaranteed PPP loans (so lenders would not lose money in the event of forgiveness). To further encourage lenders to participate in the PPP, the CARES Act provided that the Administrator of the Small Business Administration ("SBA") "shall reimburse a lender authorized to make a covered loan" and established a schedule of processing fees that lenders would be paid for making PPP loans. *See* 15 U.S.C. § 636(a)(36)(P)(i).

Some borrowers who sought PPP loans chose to seek assistance from law firms,

accountants, and other organizations (collectively, "agents") when preparing and submitting the loan paperwork.  The plaintiff in this action, an Arizona-based law firm called Radix Law PLC ("Plaintiff"), is one such agent.  In April 2020, Plaintiff assisted a borrower in applying for a PPP loan in the amount of $291,149.59 from the defendant in this action, Silicon Valley Bank ("Defendant").  Afterward, Plaintiff asserted that it was entitled to a portion of Defendant's processing fee as its "agent fee."  When Defendant declined this request, on the ground that it never agreed to pay such a fee, Plaintiff brought this action.

This is not the first case addressing whether PPP lenders have a mandatory obligation to pay fees to agents who assist borrowers in preparing PPP loan applications. To date, every court to have addressed this question has concluded that no such obligation exists.  *See, e.g.*, *Sport & Wheat, CPA, PA v. ServisFirst Bank, Inc.*, 2020 WL 4882416, *1 (N.D. Fla. 2020) ("The short answer is 'no.'"); *Johnson v. JPMorgan Chase Bank, N.A.*, 2020 WL 5608683, *1 (S.D.N.Y. 2020) ("[A]bsent an agreement between agent and lender, defendant banks are not required to pay agent fees under the text of the CARES Act or its implementing regulations."); *Juan Antonio Sanchez, PC v. Bank of S. Tex.*, 2020 WL 6060868, *2 (S.D. Tex. 2020) ("This Court believes it is the third to address this issue, and substantively joins the emerging consensus described by the Northern District of Florida and Southern District of New York . . . ."); *Leigh King Norton & Underwood, LLC v. Regions Fin. Corp.*, 2020 WL 6273739, *7 (N.D. Ala. 2020) ("[T]he Small Business Act does not make payment of agent fees mandatory."); *Am. Video Duplicating Inc. v. Citigroup Inc.*, 2020 WL 6712232, *4 (C.D. Cal. 2020) ("[T]he CARES Act does not create an entitlement . . . to collect agent fees."); *Am. Video Duplicating, Inc. v. City Nat. Bank*, 2020 WL 6882735, *1 (C.D. Cal. 2020) ("The Court agrees with . . . courts across the country that have unanimously concluded that 'the CARES Act does not require lenders to pay agent fees absent an agreement to do so.'"); *Lopez v. Bank of Am., N.A.*, 2020 WL 7136254, *8 (N.D. Cal. 2020) ("[T]he CARES Act and the SBA Rule do not require lenders to pay agent fees for assistance with PPP loan applications, except as required under a

written compensation agreement.").   For the following reasons, this Court agrees.
Accordingly, Plaintiff's claims will be dismissed.

**BACKGROUND**

I.    <u>Factual Background</u>

The following allegations are derived from Plaintiff's complaint and the exhibits
attached thereto.  (Doc. 1-1.)

Plaintiff is a law firm based in Scottsdale, Arizona.  (Doc. 1-1 at 3 ¶ 4.)  "Prior to
and throughout the PPP's implementation and funding," Plaintiff "dedicated dozens if not
hundreds of hours to preparing for the launch" of the PPP.  (*Id.* at 4 ¶ 19.)

On April 1, 2020, Plaintiff signed an engagement letter with a third-party company
(whose name has been redacted) to act as that company's "designated representative and
authorized agent for the Paycheck Protection Program."  (*Id.* at 9.)  The engagement letter
provided that the borrower would not have "to pay us [Plaintiff] directly or indirectly"
because "[o]ur fees are paid through the program costs paid to the banks."  (*Id.*)

On April 5, 2020, this borrower submitted an application to Defendant for a PPP
loan in the amount of $291,149.59.  (*Id.* at 12-13.)  The application was signed by one of
Plaintiff's representatives, who identified himself the borrower's "Agent/Representative."
(*Id.* at 13.)  "Upon submitting the PPP application to Defendant, [Plaintiff] advised that it
was entitled to payment as an agent of '1% of the loan to equal our fee of $2,911.50.'"  (*Id.*
at  5 ¶ 23.)  "Defendant did not at any time during the PPP process object to paying . . . this
fee."  (*Id.*)

After the loan was approved, Plaintiff "made a demand for payment" to Defendant.
(*Id.* at 4-5 ¶¶ 18, 23.)  This demand was rejected.  (*Id.*)

II.    <u>Procedural History</u>

On June 9, 2020, Plaintiff filed this action in state court.  (Doc. 1-1.)

On July 1, 2020, Defendant timely removed the action to federal court.  (Doc. 1.)

On September 7, 2020, Defendant filed a motion to dismiss.  (Doc. 13.)

On October 13, 2020, Plaintiff filed a response.  (Doc. 17.)

- 3 -

1    On October 20, 2020, Defendant filed a reply.  (Doc. 18.)  Thereafter, Defendant

2    filed notices of supplemental authority concerning other actions involving claims for PPP

3    agent fees.  (Docs. 19, 21, 22, 23.)

**DISCUSSION**

4

5    I.    Standard Of Review

6         To survive a motion to dismiss under Rule 12(b)(6), "a party must allege 'sufficient

7    factual matter, accepted as true, to state a claim to relief that is plausible on its face.'"  *In

8    re Fitness Holdings Int'l, Inc.*, 714 F.3d 1141, 1144 (9th Cir. 2013) (quoting *Ashcroft v.

9    Iqbal*, 556 U.S. 662, 678 (2009)).  "A claim has facial plausibility when the plaintiff pleads

10   factual content that allows the court to draw the reasonable inference that the defendant is

11   liable for the misconduct alleged."  *Id.* (quoting *Iqbal*, 556 U.S. at 678).  "[A]ll well-

12   pleaded allegations of material fact in the complaint are accepted as true and are construed

13   in the light most favorable to the non-moving party."  *Id.* at 1144-45 (internal quotation

14   marks omitted).  However, the court need not accept legal conclusions couched as factual

15   allegations.  *Iqbal*, 556 U.S. at 679-80. The court also may dismiss due to "a lack of a

16   cognizable legal theory."  *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1065 (9th Cir. 2015)

17   (internal quotation marks omitted).

18   II.   Analysis

19        This case is in federal court because, in Count One of the complaint, Plaintiff seeks

20   a declaratory judgment on a question of federal law—whether "[t]he PPP and [its]

21   implementing rules and regulations require lenders, such as Defendant, to compensate PPP

22   agents, such as Plaintiff."  (Doc. 1-1 at 5 ¶ 21.)

23        The starting point for the analysis is, of course, the statutory text.  *United States ex

24   rel. Hartpence v. Kinetic Concepts, Inc.*, 792 F.3d 1121, 1128 (9th Cir. 2015) ("The

25   preeminent canon of statutory interpretation requires us to presume that the legislature says

26   in a statute what it means and means in a statute what it says there.  Thus, our inquiry

27   begins with the statutory text, and ends there as well if the [statute's] text is unambiguous.")

28   (alteration in original) (citation and internal quotation marks omitted).  The PPP is codified

at 15 U.S.C. § 636.  Subdivision (a)(36)(P) of the statute, which is entitled "Reimbursement for Processing," provides as follows:

> (i)    <u>In general</u>.  The Administrator shall reimburse a lender authorized to make a covered loan at a rate, based on the balance of the financing outstanding at the time of disbursement of the covered loan, of—(I) 5 percent for loans of not more than $350,000; (II) 3 percent for loans of more than $350,000 and less than $2,000,000; and (III) 1 percent for loans of not less than $2,000,000.

> (ii)    <u>Fee limits</u>.  An agent that assists an eligible recipient to prepare an application for a covered loan may not collect a fee in excess of the limits established by the Administrator.

> (iii)    <u>Timing</u>.  A reimbursement described in clause (i) shall be made not later than 5 days after the disbursement of the covered loan.

> (iv)    <u>Sense of the Senate</u>.  It is the sense of the Senate that the Administrator should issue guidance to lenders and agents to ensure that the processing and disbursement of covered loans prioritizes small business concerns and entities in underserved and rural markets, including veterans and members of the military community, small business concerns owned and controlled by socially and economically disadvantaged individuals (as defined in section 637(d)(3)(C) of this title), women, and businesses in operation for less than 2 years.

*Id.*

This text undermines, rather than supports, Plaintiff's position.  In subdivision (a)(36)(P)(i), the statute affirmatively obligates the SBA Administrator to pay processing fees to lenders that make PPP loans—it provides that "[t]he Administrator *shall reimburse* a lender authorized to make a covered loan" and then sets forth a detailed fee schedule.  *Id.* (emphasis added).  Subdivision (a)(36)(P)(ii), in contrast, does not create an affirmative obligation on the part of the SBA Administrator, or anybody else, to pay a fee to agents who assist borrowers in applying for PPP loans.  Instead, it merely authorizes the SBA Administrator to set caps on such fees: "An agent that assists an eligible recipient to prepare an application for a covered loan may not collect a fee in excess of the limits established by the Administrator."  15 U.S.C. § 636(a)(36)(P(ii)).  This is hardly proof that Congress

intended to mandate the payment of fees to agents in all cases.  *See, e.g., Sport & Wheat*, 2020 WL 4882416 at *3 ("[T]he different language used by Congress in mandating payment of lenders ('shall reimburse') and limiting agent fees ('may not collect') is indicative of an intent not to require lenders to pay agent fees."); *Lopez*, 2020 WL 7136254 at *7 ("[T]he PPP statute itself simply does not provide for the affirmative payment of agent's fees.  It merely establishes that there can be a ceiling on the amount of such fees if they are collected.").

The reference to capped agent fees in § 636(a)(36)(P)(ii) must also be understood in the broader context of how the SBA operates.  Congress provided that the PPP would be part of the SBA's "Section 7(a)" lending program.  *See* Coronavirus Aid, Relief, and Economic Security ("CARES") Act, Pub. L. 116-136, 134 Stat. 281, 286 ("Section 7(a) of the Small Business Act (15 U.S.C. 636(a)) is amended . . . .").  Under the Section 7(a) program, "a small business applying for a Section 7(a) loan may—but is not required to—use an 'agent' for assistance with the application process." *Johnson,* 2020 WL 5608683 at *1.  Critically, "[w]hen a small business chooses to use an agent, the SBA and its accompanying regulations set out a comprehensive scheme regulating how and how much an agent is to be paid." *Id.* at *2.  Among other things, the agent must submit a form compensation agreement, which is "called a Form 159 Fee Disclosure and Compensation Agreement," and this agreement must identify "the party paying the fee and amount paid." *Id.* Form 159 provides that the agent fee may be paid either by the borrower or the lender, both not by both.  (Doc. 14-2 at 3 [actual Form 159: "The Agent may not be compensated by both Applicant and SBA Lender for the same service."].)  This backdrop bolsters the conclusion that the reference to agent fees in § 636(a)(36)(P)(ii) wasn't some attempt by Congress to obligate PPP lenders to pay fees to agents in all cases, irrespective of the underlying parties' actual agreement.  Instead, it simply reaffirmed the SBA Administrator's long-established authority, *see* 13 C.F.R. § 103.5(b), to cap the size of agent fees paid in the subset of cases where the parties agreed the agent would receive compensation from the lender.

Plaintiff's arguments to the contrary are unpersuasive.  Plaintiff argues that it would "make[] sense for policy reasons" to interpret the PPP as requiring the payment of agent fees by the lender in all cases, even though the Section 7(a) program doesn't usually work that way, because "Congress enacted the PPP during a once-in-a-century pandemic, to offer emergency financial assistance to, in the big picture, save the U.S. economy and, on a micro-level, save small businesses and their employees from financial ruin" and thus Congress must have "needed to and intended to provide incentives to lenders and agents to help the process run smoothly, while also preventing Applicants from having to pay fees related to PPP loans in order to maximize the financial benefit to them."  (Doc. 17 at 2-4, 10.)  But it is not this Court's job to make policy judgments about how the PPP could or should have been structured.  Instead, the Court's task is to do its best to discern Congress's intent.  And as discussed, basic canons of statutory construction support the conclusion that Congress didn't intend, through its passing reference to capped fees in § 636(a)(36)(P)(ii), to create some new, affirmative obligation for lenders to pay agent fees in all cases.

Plaintiff also places heavy emphasis on an interim final rule ("IFR") pertaining to the PPP that was issued by the SBA in April 2020.  *Business Loan Program Temporary Changes; Paycheck Protection Program*, 85 Fed. Reg. 20,811 (Apr. 15, 2020) (to be codified at 13 C.F.R. pt. 120).  Part 4(c) of the IFR, which is entitled "Who pays the fee to an agent who assists a borrower?", provides as follows:

> Agent fees will be paid by the lender out of the fees the lender receives from SBA.  Agents may not collect fees from the borrower or be paid out of the PPP loan proceeds.  The total amount that an agent may collect from the lender for assistance in preparing an application for a PPP loan (including referral to the lender) may not exceed:
>
> > i.    One (1) percent for loans of not more than $350,000;
> >
> > ii.   0.50 percent for loans of more than $350,000 and less than $2 million; and
> >
> > iii.  0.25 percent for loans of at least $2 million.
>
> The Act authorizes the Administrator to establish limits on agent fees. The Administrator, in consultation with the Secretary, determined that the agent fee limits set forth above are reasonable based upon the application

requirements and the fees that lenders receive for making PPP loans.

*Id.* at 20816.  According to Plaintiff, the key language appears in the very first sentence, which provides that "Agent fees will be paid by the lender . . . ."  (Doc. 17 at 5-8.)  Plaintiff likens this phrase to phrase "[t]he Administrator shall reimburse," which appears in § 636(a)(36)(P)(i), and argues that "Agent fees will be paid by the lender" should therefore be viewed as proof of Congress's intent to mandate the payment of agent fees by the lender in all cases.  (*Id.*)

There are several problems with this argument.  As an initial matter, the words in the IFR are not the words of Congress—they are the words of a federal agency that was promulgating a rule.  The words of Congress are codified at 15 U.S.C. § 636, and the statute does not say that "Agent fees will be paid by the lender"—it says that "[a]n agent that assists an eligible recipient to prepare an application for a covered loan may not collect a fee in excess of the limits established by the Administrator."  *Id.* § 636(a)(36)(P)(ii).  It is therefore incorrect to argue, as Plaintiff does, that "The PPP Uses 'Shall' And 'Will' Interchangeably" or that "Congress use[d] the words 'shall' and 'will' to describe the payment of fees."  (Doc. 17 at 5, 6.)

More important, because Congress expressly reaffirmed the SBA Administrator's authority to set caps on the fees charged by agents, the most logical and commonsense interpretation of Section 4(d) of the IFR is as a description of the mechanism for paying a fee to an agent, and the maximum size of the fee, in the subset of cases involving a valid agreement between the lender and agent to pay such a fee.  *See, e.g., Sport & Wheat*, 2020 WL 4882416 at *3 ("The IFR . . . . does not <u>require</u> that lenders share their fees . . . ; instead, the language simply explains that, if an agent is to be paid a fee, the fee must be paid by the lender from the fee it receives from the SBA."); *Lopez*, 2020 WL 7136254 at *7 ("The [IFR] statement in question is not about *whether* fees 'will be paid,' but, rather, *by whom* they will be paid. . . .  It does not mandate the payment of such fees in the first place.").[1]

_____

[1]       Plaintiff's reliance on a fact sheet issued by the Department of Treasury (Doc. 17 at

Finally, Plaintiff argues that "[e]ven if the 7(a) provisions were to govern" here, and even though it "has not *yet* entered into a Form 159 with [Defendant]," this Court should order Defendant to "go through the procedural formality of executing and submitting the form." (Doc. 17 at 11.) This argument is unavailing. It would not be a "procedural formality" to require Defendant to consent to paying an agent fee to Plaintiff—instead, such an approach would retroactively change the terms of a completed transaction. *Cf. Sport & Wheat*, 2020 WL 4882416 at *4 ("[N]either Plaintiff nor the borrowers executed Form 159, nor did they have agreements with Defendants regarding payment for the work Plaintiff performed in assisting borrowers in obtaining PPP loans through Defendants. Accordingly, Defendants have no legal obligation under the CARES Act or the IFR to pay Plaintiff an 'agent fee' for helping the borrowers get PPP loans from Defendants . . . .").

For these reasons, Plaintiff's request for a declaratory judgment in Count One will be dismissed. And because Plaintiff concedes its state-law claims in Counts Two, Three, and Four rise and fall with Count One (Doc. 17 at 11 ["As a threshold matter, the legal claims fail if the Court interprets the PPP as having discretionary borrower agent fees."]), those claims will be dismissed as well.

Accordingly, **IT IS ORDERED** that:

(1)     Defendant's motion to dismiss (Doc. 13) is **granted**.

(2)     The Clerk of Court shall enter judgment accordingly and terminate this action.

Dated this 15th day of December, 2020.

Dominic W. Lanza
United States District Judge

---

8-9) fails for the same reasons as Plaintiff's reliance on the IFR.